[Civ. No. 193.    Second Appellate District.—May 10, 1906.]

## HARRIET O. MATTERN and F. W. MATTERN, Respondents, v. J. H. CANAVAN and IDA CANAVAN, Appellants.

TRUST—BREACH OF CONFIDENTIAL RELATION—FRAUD IN PURCHASE OF MINE—CORPORATION—ENFORCEMENT OF CONSTRUCTIVE TRUST.— Where defendant, C., represented to plaintiff, Mrs. M., that he could purchase a mine for $8,000, which he had in fact agreed to purchase for $2,000, and they agreed to purchase it, and that she should pay $2,000, and he should pay $6,000, without intending to pay anything, and that they should form a corporation, and deed the property thereto, and divide its stock, he receiving the larger share, the relation between them was confidential, analogous to that of partners, and he could not make a profit at her expense, by deception as to the purchase price, and he was chargeable in equity as constructive trustee for her benefit in respect of the entire property purchased, which equitable right would extend to the stock of the corporation in consideration of which the mine was transferred.

ID.—CONTRACT AVOIDED FOR FRAUD—RESULTING TRUST.—The plaintiff would have the right to avoid and repudiate the agreement in its entirety on account of the fraud of the defendant in procuring it; and it appearing that he had paid nothing for the property, and that she had paid the entire purchase price therefor, a trust resulted in her favor, in respect to the entire mining property; so that in any point of view, plaintiff is entitled to the entire beneficial interest in the mining property purchased, and as that has passed to the corporation in consideration of its stock, she is entitled to so much of the stock as was represented by that property.

ID.—EQUITABLE DIVISION OF STOCK.—Where it appeared that other property was transferred to the corporation by defendant representing the sum of $220 only, the superior court equitably divided the entire stock of the corporation between plaintiff and defendant in the proportion represented by the amount of $2,000 and $220 paid by them respectively.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Anderson & Anderson, for Appellants.

J. L. Murphey, for Respondents.

GRAY, P. J.—In this action the plaintiffs obtained a judgment against defendants decreeing that defendants held certain stocks in a mining corporation in trust for the plaintiff Harriet O. Mattern, and that said stock be assigned and deliver to said plaintiff. The defendants appeal from said judgment and from an order denying them a new trial.

The only points urged for reversal are, (1) that a suit to enforce a trust was not the proper remedy in the case, and (2) that the finding of the court that the defendant J. H. Canavan was acting as the agent of Mrs. Mattern when he obtained an option on the Montana group of mines is not sustained by the evidence.

As to the second point, we think the appellants do not understand the finding. It reads as follows: "That said J. H. Canavan in purchasing said five mining claims (the Montana group) acted as the agent for plaintiff, Harriet O. Mattern, and that he obtained said title in trust for her." Of course, the defendant having admittedly paid her money and only her money for those claims, and having taken the deed in his own name, held the title in trust for her, and the finding, on the undisputed evidence, could not have been otherwise than it was. It is immaterial whom he acted for when he obtained the option or contract for a sale. The sale was not made until the money was paid and the deed taken out of escrow and delivered to the grantee. The material question is, Whose money paid for the property?

As to the first point, we are also satisfied that plaintiffs did not mistake their remedy. The plaintiffs are husband and wife. The defendants are also husband and wife. The defendant J. H. Canavan represented that he could purchase the "Montana Group" for $8,000, and it was agreed between him and Mrs. Mattern that such purchase should be made, she

paying $2,000 and he paying $6,000 therefor, and that there-
after they should form a corporation with a capital stock of
$1,000,000 and one million shares, to which the property
should be transferred. It was agreed that two hundred and
fifty thousand of these shares should be issued to Mrs. Mat-
tern, five hundred thousand to Canavan, and two hundred and
fifty thousand to be left in the treasury. This agreement was
carried out, with the exception that Canavan paid only $2,000
for the "Montana Group" in accordance with his previous
agreement with the owners thereof. The relation between Mrs.
Mattern and Canavan was analogous to that which exists be-
tween partners, and whatever Canavan did in the premises was
done as the agent of Mrs. Mattern. It has often been held that
each partner is the agent of the other as to all partnership
transactions. (Civ. Code, sec. 2429.) The relations of the
parties were, therefore, confidential, and each party was by
law and equity forbidden to make a profit for himself at
the expense of the other by deception as to the purchase price.
The acquisition of property in this way by a party standing
in such a relation is an act of fraud and subjects the guilty
party not only to an action at law, but to accountability in
equity as for a trust constructively raised for the benefit of
the injured party. In pursuance of this rule, the plaintiff
having paid the whole purchase price of the five mining claims,
known as the "Montana Group," was entitled to the estab-
lishment of a constructive trust in all that property. This
equitable right extended also to the stock in the corporation
to which the land had been transferred, which stock may
properly be said to be the proceeds of the land, as it is the
only thing of value representing said land. All these proposi-
tions find full support in an Alabama case "on all-fours"
with the case at bar, entitled *Johnston* v. *Little,* 141 Ala. 382,
[37 South. 592]. In that case the interest in the property
is treated as a constructive trust. It is immaterial, perhaps,
whether we call it a constructive trust arising from the fraud
or a resulting trust arising from the fact that the plaintiff's
money paid for the land. (Civ. Code, sec. 853.) There is
good ground, I think, for treating it as a resulting trust.
Section 2431 of the Civil Code provides: "A partner is not
bound by any act of a copartner in bad faith toward him,
though within the scope of the partner's powers, except in

favor of persons who have in good faith parted with value in reliance upon such act.'' I think the principle of this provision should be applied to the relations existing between the parties here, and that under it the plaintiff should be permitted to repudiate the agreement which she made with the defendant in its entirety, for the reason that the same was induced by the false representations and fraud of defendant. In other words, the contract between them should be treated as if it had never been made. This would leave nothing to be considered, except the fact that the plaintiff's money paid for the property and the deed was taken in the name of defendant—a clear case of a resulting trust. But, however this may be, it is plain that under either theory the plaintiff is entitled to the entire beneficial interest in the land, and as this has passed to the corporation she is equally entitled to so much of the stock of the corporation as represents that interest. That whatever interest she had in the mines attaches also to the stock does not seem to be questioned by the appellant, and therefore we deem it unnecessary to further discuss that question.

There is another view to be taken of the evidence in the case which goes to confirm the views already expressed. Stripped of its fraud and stated in substance, the contract of the parties was that Canavan should buy the property for himself and Mrs. Mattern, and that each of them should have an interest in such property equivalent to the amount that each should pay therefor. Canavan paid nothing and Mrs. Mattern paid the entire purchase price, and was accordingly entitled to the entire property. This is the way that Canavan by his representations made Mrs. Mattern understand the contract.

It is also found by the court upon sufficient evidence that some other property was transferred to the corporation, and that for all the property transferred to the corporation Mrs. Mattern paid the sum of $2,000, and Canavan actually contributed thereto $220 and no more. Disregarding all the contracts between the parties for the reason that they were all tainted with the misrepresentations and frauds of Canavan, and treating the corporation as a mere agency of the parties in their business transactions, as to all of which the court was fully warranted under the facts and law in so doing, it was

perfectly proper to find and decree that the parties were owners of the stock of this corporation in proportions respectively represented by these amounts of $2,000 and $220 paid by them. The court made no mistake either in law or in fact in so finding and decreeing. Nor did the plaintiff make any mistake in the remedy which she sought and obtained.

The decree makes no new contracts for the parties; it simply treats all the contracts between the parties as vitiated by the fraud of one of the parties to those contracts and holds them null and void for that reason; and having thus disposed of the contracts between the parties, applies to the case the equitable doctrine of trusts, a doctrine clearly recognized by our statutes and decisions. This doctrine is also properly applied "so as to make the payment of a part of the purchase money carry with it a proportionate equitable estate in the land purchased equal to the amount paid." (*South San Bernardino Co.* v. *San Bernardino Nat. Bank,* 127 Cal. 245, [59 Pac. 699].)

There is no merit in the appeal, and the same seems to have been taken merely for delay.

The judgment and order are affirmed.

Allen, J., concurred.

SMITH, J., Concurring.—I concur in the judgment of affirmance, but I am not satisfied that the judgment can be justified on the reasoning of the opinion. In view of the terms of the contract between the parties, I do not see how the principle of resulting trust can be held to apply to the purchase of the mines; nor, in view of the fact that stock has been issued to purchasers, do I think that doctrine can apply to the stock regarded as a fund to be divided according to the terms of the contract. Had the corporation been made a party, as it should have been, I think the issue of stock to the defendants should have been held fraudulent, and the stock canceled, or assigned to the corporation. But as the corporation was not made a party, and its nonjoinder was not objected to, it was necessary for the court to determine the controversy between the parties, so far as it could be done without prejudice to the rights of others (Code Civ. Proc., sec. 389) ; and under the circumstances I do not see how

3 Cal. App.—32

this could have been done otherwise than it was.    The judgment is, indeed, open to the objection that the stock in controversy, which properly belongs to the corporation, is adjudicated to the plaintiff to the exclusion of the corporation, and the other stockholders; but as these are not parties, their rights are not affected by the judgment and may be asserted in another proceeding; and at all events, the appellants are not concerned with this question and have no cause to complain.